UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

JOYCE NORWARD,

                    Plaintiff,

          -vs-                          **No. 1:13-CV-00747 (MAT)**
                                        **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                    Defendant.

———————————————————————

## I.   Introduction

     Represented by counsel, Joyce Norward ("plaintiff") brings
this action pursuant to Title II of the Social Security Act ("the
Act"), seeking review of the final decision of the Commissioner of
Social Security ("the Commissioner") denying her application for
disability insurance benefits ("DIB"). The Court has jurisdiction
over this matter pursuant to 42 U.S.C. § 405(g). Presently before
the Court are the parties' cross-motions for judgment on the
pleadings pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure. For the reasons discussed below, plaintiff's motion is
granted to the extent that this case is remanded for further
administrative proceedings consistent with this Decision and Order.

## II.  Procedural History

     The record reveals that in December 2007, plaintiff (d/o/b
August 23, 1964) applied for SSI, alleging disability as of May 25,
2007 due to back and neck pain resulting from disc herniations.
After her application was denied, plaintiff requested a hearing,
which was held before administrative law judge Bruce R. Mazzarella

("the ALJ") on March 10, 2010. The ALJ issued an unfavorable decision on March 25, 2010.

Plaintiff appealed that decision, and the Appeals Council remanded the case for reconsideration. In its November 5, 2010 order, the Appeals Council directed the ALJ to consult a vocational expert ("VE") to clarify the effects of plaintiff's functional limitations on her ability to do work. On remand, the ALJ held another hearing on May 4, 2011. The ALJ issued a second unfavorable decision on September 14, 2011. The Appeals Council denied review of that decision. This timely action followed.

### III. The ALJ's Decision

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 25, 2007, the alleged onset date. At step two, the ALJ found that plaintiff had the following severe impairments: chronic neck and back discomfort with evidence of mild radiculopathy, ulnar neuropathy, and tendonitis and mild degenerative changes of the right elbow. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

Before proceeding to step four, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to

perform the full range of sedentary work as defined in 20 C.F.R.
§ 404.1567(a), and that during the course of an eight-hour workday,
plaintiff could: sit for a total of eight hours with only normal
breaks and meal periods; stand and/or walk on an occasional basis
and for up to a total of 2 hours; lift and carry up to 10 pounds on
an occasional basis; and on a limited to occasional basis stoop,
crouch, kneel, and climb stairs.

In determining plaintiff's RFC, the ALJ considered the record
as a whole, which established that plaintiff was involved in a on-
the-job motor vehicle accident in 2005, after having served for
approximately 20 years as a police officer for the Buffalo Police
Department. Plaintiff sustained back and neck injuries in the
accident, which worsened over time. MRI studies showed disc bulging
in the cervical and lumbar spine, nerve testing studies revealed
evidence of C8-T1 radiculopathy and right ulnar neuropathy at the
elbow, and plaintiff was repeatedly assessed, on physical
examination, as suffering from spasms in the back and neck.
Plaintiff pursued various treatment for her conditions, including
physical therapy, massage therapy, medication management, use of a
TENS unit, acupuncture, and injections.

In connection with his consideration of the entire record, the
ALJ gave controlling weight to the July 2009 opinion of plaintiff's
treating physician, Dr. Pamela Reed. Dr. Reed stated that plaintiff
suffered from fibromyalgia, neck strain and lumbar strain with disc

protrusion on MRI of lumbar spine at L5-S1. Dr. Reed opined that plaintiff could occasionally lift and carry up to 20 pounds; sit for eight hours in an eight-hour workday and stand/walk for four hours in an eight-hour workday, but could only sit and stand for two hours at a time without interruption and could only walk for one hour at a time without interruption ("[Plaintiff] can perform a combination of sit/stand/walk during [eight] hour work day" [T. 510]); frequently reach, handle, finger, and feel with the right hand; occasionally push/pull with the right hand; frequently handle, finger, and feel with the left hand; occasionally reach, push, and pull with the left hand; frequently climb stairs and ramps, balance, stoop, and kneel; and occasionally climb ladders or scaffolds, crouch, and crawl. Dr. Reed stated that plaintiff needed the ability to "stretch and change body position to prevent paraspinal muscle spasms." T. 510. She noted environmental limitations only with extreme cold, and opined that plaintiff could perform all listed activities of daily living.

At step four, the ALJ determined that plaintiff could not perform past relevant work as a police officer. At step five, with reference to VE testimony, the ALJ determined that jobs existed in significant numbers in the national economy that plaintiff could perform. Accordingly, the ALJ found plaintiff not disabled.

## IV.  Discussion

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

Plaintiff contends that (1) the Appeals Council erred in failing to remand the case based on new evidence; (2) the ALJ improperly weighed the consulting opinion of Dr. Miller; and (3) the ALJ erroneously assessed plaintiff's credibility.

### A.  New Evidence

Plaintiff contends that new evidence, submitted to the Appeals Council following the ALJ's September 14, 2011 decision, required remand. In its May 23, 2013 denial of review, the Appeals Council stated that "the additional evidence does not provide a basis for changing the [ALJ]'s decision." T. 2. The new evidence consisted of MRI imaging of plaintiff's cervical and lumbar spines, and three letters from plaintiff's recent treating physician, Dr. Andrew Cappuccino, in which he opined that conservative treatment had not been effective and recommended surgery.

5

As plaintiff points out, the ALJ discussed plaintiff's pursuit of "conservative" treatment in his review of the evidence. T. 22-23. This treatment "included physical therapy, massage therapy, medication management, use of a TENS unit, acupuncture, and injections." T. 22. The ALJ stated that "[d]iagnostic test results have yielded findings consistent with the [plaintiff's] decision to pursue only conservative care," noting a December 2005 cervical spine MRI which revealed no herniations or stenosis at C2-C3, C3-C4, C6-C7 or C7-T1, an August 2006 lumbar MRI showing a small to moderate-sized disc protrusion at L5-S1 superimposed on mild disc degeneration, and January 2009 EMG/NCS studies showing evidence of right C8-T1 radiculopathy and right ulnar neuropathy at the elbow. T. 23. The record shows that those same studies also revealed minimal diffuse broad based disc bulges at C4-C5 and C5-C6. T. 355.

The new MRIs, performed in August 2011, show a "new shallow midline disc herniation" with no stenosis at C4-C5; a "new left paracentral disc herniation abut[ting] the ventral aspect of the exiting left C6 nerve root," with no stenosis at C5-C6; a "broad-based posterior disc bulge, foraminal bulging but no peripheral stenosis" at L4-L5; and a "broad-based right paracentral disc herniation [indenting] the thecal sac and posteriorly deviat[ing] the right S1 nerve in the lateral recess," with mild neural foraminal narrowing (findings described as "similar to prior MRI") at L5-S1. T. 696-99. Based on these studies, which were performed

in association with an initial consultation with Dr. Cappuccino, Dr. Cappuccino submitted a letter stating, "[I]n light of the fact that [plaintiff] has been through and failed many forms of conservative care, [he recommended] anterior retroperitoneal discectomy, partial corpectomy, and interbody stabilization with the use of possible ProDisc-L [prosthesis] versus traditional fusion." T. 708.

Plaintiff contends that this new evidence was sufficient to trigger review of the ALJ's decision. "If the new evidence relates to a period before the ALJ's decision, the Appeals Council 'shall evaluate the entire record including the new and material evidence submitted . . . [and] then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" Perez v. Chater, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. §§ 404.970(b), 416.1470(b)). Evidence is "new" when it has not been considered previously in the administrative process. See Ovitt v. Colvin, 2014 WL 1806995, *3 (N.D.N.Y. May 7, 2014). New evidence is "material" where it is both relevant to the plaintiff's condition during the relevant time period, and probative. Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." Id.

In this case, the evidence regarding the August 2011 MRI studies was new evidence relevant to plaintiff's condition during the relevant time period. Contrary to the Commissioner's argument, the evidence is not merely cumulative, because it contains objective findings that plaintiff's spinal condition had worsened and a treating physician's opinion that conservative treatment was no longer effective and that surgery was required. In the Court's view, there is a reasonable possibility that this evidence would have influenced the ALJ to decide plaintiff's application differently. Most importantly, the evidence raises questions of whether Dr. Reed's July 2009 functional assessment, which was completed over two years prior to the ALJ's decision, still accurately described plaintiff's limitations. This question is critical because the ALJ gave Dr. Reed's functional assessment controlling weight and modeled his hypotheticals to the VE after its findings.

Moreover, as plaintiff correctly argues, the Appeals Council is required to state the weight given to treating physicians' opinions. See Davidson v. Colvin, 2013 WL 5278670, *8-9 ("[W]here newly submitted evidence consists of findings made by a claimant's treating physician, the treating physician rule applies, and the Appeals Council must give good reasons for the weight accorded to a treating source's medical opinion. . . . Failure to provide good reasons for not crediting the opinion of a claimant's treating

physician is grounds for remand") (internal quotation marks omitted). The Appeals Council's summary treatment of Dr. Cappuccino's treating physician opinion, where that opinion constituted new evidence that could have changed the outcome of the case, constituted reversible error. See Flagg v. Colvin, 2013 WL 4504454, *6 (N.D.N.Y. Aug. 22, 2013) ("[t]he summary statement that the additional evidence presented by [p]laintiff (including [the doctor's] assessment) did not provide a basis for changing the ALJ's decision is insufficient as it frustrates meaningful review by this Court and provides the [p]laintiff with no material information to explain why his treating physician's opinion was rejected").

The case is therefore remanded for consideration of the new evidence relating to the August 2011 MRI studies. On remand, the ALJ is directed to obtain a functional assessment, from a treating source, which evaluates plaintiff's impairments and resulting functional limitations, if any, regarding the time period relevant to this claim. That opinion should take into account the new evidence produced by plaintiff and made part of this administrative record, as well as any additional evidence the ALJ deems necessary in order to fully develop the record.

B.  **Weight Given to Dr. Miller's Opinion**

Plaintiff contends that the ALJ erred by not incorporating into the RFC finding certain limitations found by Dr. Donna Miller

in her consulting examination. In that January 2011 exam, Dr. Miller found that plaintiff could occasionally lift and carry up to 20 pounds; never reach overhead with either hand; and only occasionally reach in other directions, handle, finger, feel, push, and pull with either hand. As the ALJ pointed out, Dr. Miller also stated, in a narrative summary, that plaintiff had "moderate limitation for repetitive heavy lifting, pushing, pulling, turning, and twisting." T. 636.

As noted above, the ALJ gave controlling weight to Dr. Reed's July 2009 opinion. That opinion found that plaintiff could frequently reach, handle, finger, and feel with the right hand; occasionally push/pull with the right hand; frequently handle, finger, and feel with the left hand; and occasionally reach, push, and pull with the left hand. According to Dr. Reed, "neck strain with shoulder strain on the left side prevent[ed] [plaintiff from] reaching with [her] left arm/shoulder." T. 511. Dr. Reed's conclusions as to plaintiff's limitations with her hands were thus less restrictive than Dr. Miller's specific findings; however, arguably, Dr. Miller's conclusion of "moderate" limitations with these extremities was ultimately consistent with Dr. Reed's opinion.

The treating physician rule provides that an ALJ must give controlling weight to a treating physician's opinion if that opinion is well-supported by medically acceptable clinical and

10

diagnostic techniques and not inconsistent with other substantial evidence in the record. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2). In this case, the ALJ gave Dr. Reed's July 2009 opinion controlling weight. Therefore, he was entitled to reject the portions of Dr. Miller's opinion which conflicted with Dr. Reed's assessment. Contrary to plaintiff's contention, under these circumstances the ALJ was not required to specifically state the weight given to Dr. Miller's consulting opinion. See Duell v. Astrue, 2010 WL 87298, *5 (N.D.N.Y. Jan. 5, 2010) ("The regulations further require an ALJ to 'explain in the decision the weight given to the opinions of a State agency medical or psychological consultant,' *unless the ALJ has given controlling weight to the opinions of a treating source*.") (emphasis added).

Therefore, considering the record before the ALJ when he made his decision, he did not err in rejecting certain portions of Dr. Miller's opinion in favor of Dr. Reed's controlling opinion. On remand, however, the ALJ should reconsider Dr. Miller's January 2011 opinion in light of any new medical source opinions received in connection with his review of the new evidence outlined above. Should the ALJ consider it necessary to obtain further consulting opinions as to plaintiff's limitations, the ALJ is directed to do so.

### C.    Credibility

Plaintiff contends that the ALJ improperly evaluated plaintiff's credibility. The ALJ discussed plaintiff's credibility with reference to the two-step inquiry laid out in 20 C.F.R. § 416.929. The ALJ's discussion of the evidence includes a summary of her testimony at both administrative hearings. The ALJ noted that plaintiff's complaints of symptoms worsened from her first (May 2010) hearing to her second (May 2011) hearing. Although the ALJ did not explicitly discredit plaintiff's later statements for inconsistency, the ALJ's conclusion regarding credibility, which found her testimony to be incredible to the extent that it conflicted with his RFC finding, implies that he discredited her later statements as a result of their inconsistency with her earlier, less severe, complaints.

Considering the record before the ALJ, his decision, which incorporates his review of the testimony, indicates that he used the proper standard in assessing credibility. See Britt v. Astrue, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility); see also Judelsohn v. Astrue, 2012 WL 2401587, *6 (W.D.N.Y. June 25, 2012) ("Failure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently

specific to conclude that he considered the entire evidentiary record."). However, the Court notes that the new evidence submitted by plaintiff after the ALJ's decision does indicate that her condition worsened over the time period relevant to her claim, to such a degree that, based on studies dated three months after the second hearing, a treating physician recommended surgery and potentially a prosthesis. This evidence may effect the ALJ's evaluation of her credibility upon reconsideration. Therefore, on remand, the ALJ is directed to reconsider plaintiff's credibility in light of the new evidence, especially regarding any conclusions he previously made as to inconsistencies in plaintiff's testimony at the two administrative hearings.

## V.   Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 8) is denied, and plaintiff's cross-motion for judgment on the pleadings (Doc. 9) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

_____

HON. MICHAEL A. TELESCA
United States District Judge

Dated:     October 28, 2015
           Rochester, New York.

13